IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JUAN RIVERA, on his own behalf and
on behalf of those similarly situated,

    **Plaintiff,**

vs.

                        Case No.:

FREEMAN SECURITY SERVICES,
INC., a Florida Corporation,

    **Defendant.**
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, the Plaintiff, JUAN RIVERA (hereinafter "Plaintiff") on his own behalf and on behalf of others similarly situated, by and through their undersigned counsel, and hereby sues the Defendant, FREEMAN SECURITY SERVICES, INC., (hereinafter referred to as "Defendant") and states as follows:

### INTRODUCTION

1.    This is an action to recover money damages for unpaid overtime wages, retaliation and additional damages under the Fair Labor Standards Act 29 U.S.C. §§ 201-216. Plaintiff seeks damages and a reasonable attorneys' fee.

2.    This action is intended to include each and every "Security Officer" who worked for the Defendants at any time within the past three (3) years.

### JURISDICTION

3.    This action arises under the Fair Labor Standards Act, 29 U.S.C. §210, *et. seq.* The Court has jurisdiction over the FLSA claim pursuant to 29 U.S.C. §216(b).

## **COVERAGE**

4. Plaintiff is a resident of Kissimmee, Osceola County, Florida.

5. At all times relevant hereto (2017-2020), Plaintiff was an "employee" pursuant to 29 U.S.C. §203(e)(1) of the Fair Labor Standards Act.

6. At all times relevant hereto, Plaintiff was a non-exempt employee of the Defendant, and regularly worked in excess of forty (40) hours during one or more workweeks within three (3) years of the filing of this Complaint.

7. Defendant, FREEMAN SECURITY SERVICES, INC., is a Florida corporation which maintains its business operations, among others, in Orange County, Florida.

8. Defendant, FREEMAN SECURITY SERVICES, INC., is an "employer" pursuant to 29 U.S.C. § 203(d) of the Fair Labor Standards Act.

9. During all times material hereto, Defendant, FREEMAN SECURITY SERVICES, INC. was an enterprise engaged in commerce as defined in 29 U.S.C. §§ 203(r) and 203(s).

10. Based upon information and belief, the annual gross revenue of Defendant, individually and separately, was in excess of $500,000.00 per annum during the relevant time periods.

11. At all material times relevant to this action (2017-2020), Defendant had two (2) or more employees, including Plaintiff, engaged in interstate commerce, handling or otherwise working on materials that have been moved in or produced for interstate commerce (i.e. mechanical equipment, telephones, computers, pens, and paper).

12. At all times pertinent to this Complaint, Defendant failed to comply with 29 U.S.C. §§ 201-219 in that Plaintiff performed services for the Defendant for which no provision was made to properly pay Plaintiff for those hours in which overtime was required to be paid.

**GENERAL ALLEGATIONS**

13. During all times relevant to this complaint, Plaintiff, and those similarly situated employees, were employed by Defendant.

14. The Plaintiff was employed for the Defendant from approximately 2012 through November 2018.

15. Plaintiff started as a Security Officer before rising to supervisor.

16. The Plaintiff was paid an hourly rate of $11.50 for his work.

17. Plaintiff, and those similarly situated employees, were never compensated for any work performed beyond forty (40) hours per week.

18. The Plaintiff, and those similarly situated employees, regularly worked an average of 60 hours per week for the Defendant.

19. Defendant did not compensate the Plaintiff, and those similarly situated employees, at one and a half times his hourly rate for any hours worked over 40 per workweek.

20. The Defendant and its representatives knew that Plaintiff, and those similarly situated employees, were working overtime and that federal law requires employees such as the Plaintiff to be compensated at time and one-half per hour for overtime pay.

21. In the course of their employment with Defendant, Plaintiff, and those similarly situated employees, worked the number of hours required of them, but were not paid time and one-half for all hours worked in excess of forty (40) during a workweek as required by the Fair Labor Standards Act.

22. The records concerning the number of hours actually worked by Plaintiff, and those similarly situated employees, and the compensation actually paid to them, are in the possession and custody and control of Defendant, and Plaintiff, and those similarly situated employees, is unable

to state at this time the exact amount due and owed to them. Plaintiff proposes to obtain such information by appropriate discovery proceedings to be taken in this case and to prove the amounts due at trial.

23. In 2018, Defendant was audited by the Department of Labor ("DOL").

24. During the audit, Defendant's owner tried to force Plaintiff to lie to the DOL on behalf of Defendant.

25. Specifically, the DOL had determined that Defendant owed Plaintiff a specified amount in unpaid wages.

26. In response, Defendant told Plaintiff to lie to the DOL by signing a document confirming Defendant issued the payment to Plaintiff *without* him actually taking the money.

27. Plaintiff outright refused to lie to the DOL.

28. In refusing to lie to the DOL, Plaintiff also told Defendant that the overtime premium money was indeed owed to him.

29. On November 15, 2018, shortly after Plaintiff refused to lie to the DOL on behalf of Defendant, he was terminated.

30. Plaintiff has retained the undersigned legal counsel to prosecute this action on his behalf, and has agreed to pay a reasonable fee for their services.

31. Plaintiff is entitled to reasonable attorneys' fees if he is the prevailing party in this action.

## PROCEDURAL HISTORY

32. Plaintiff initially intended to file his claims in the Middle District of Florida.

33. However, due to an Arbitration Agreement ("Agreement"), Plaintiff and Defendant agreed arbitration was the proper forum for the dispute. *See Ex A*.

34. The Agreement states that mediation should be attempted before arbitration.

35. The Agreement's requirement for mediation before filing suit flies in the face of the FLSA because the statute does not require mediation before a lawsuit is filed.

36. Nonetheless, Plaintiff was willing to attempt mediation before filing suit to save time and costs and preserve judicial economy.

37. Plaintiff offered to enter into a tolling agreement with Defendant in order to preserve his claims under the FLSA statute of limitations while mediation was being coordinated and conducted.

38. However, Defendant refused to enter into a temporary tolling agreement. *See Ex B.*

39. A tolling agreement was necessary because Plaintiff worked for Defendant for approximately six (6) years. Since the maximum time Plaintiff could claim in overtime under the FLSA is three years, each week that Plaintiff did not file with arbitration would be one less week he could claim in damages.

40. As such, Plaintiff filed a Complaint before the American Arbitration Association ("AAA") on May 24, 2019, in order to preserve his and the class' claims under the FLSA. Plaintiff paid the related filing fee with AAA on or about the same date.

41. AAA was selected by Plaintiff because the Agreement does not stipulate which arbitration forum should be used.

42. Moreover, based on experience, Plaintiff's counsel is aware that AAA has arbitrators capable of overseeing complex FLSA claims.

43. Defendant refused to use AAA to arbitrate the claims without mediation being conducted first. *See Ex C.*

44. As such, AAA closed Plaintiff's file on or about June 14, 2019. *See Ex D.*

45. Plaintiff, again, offered to enter into a tolling agreement.

46. Defendant, again, refused to enter into a tolling agreement. *See Ex E*

47. With arbitration no longer an option, Plaintiff filed his Complaint in federal court: *Juan Rivera v. Freeman Security Services, Inc.*, Case No.: 6:19-cv-01353 (M.D. Fla. July 2019) on July 23, 2019.

48. Plaintiff filed in federal court in order to preserve his claims while mediation was being coordinated.

49. Defendant then refused to attend mediation after being notified of Plaintiff's federal Complaint. *See Ex F*

50. Next, Defendant agreed to waive the mediation "requirement" and proceed with arbitration if Plaintiff withdrew his federal Complaint. See Ex G.

51. Plaintiff agreed and filed a voluntary dismissal without prejudice of his federal Complaint on July 26, 2019.

52. After more deliberations, both parties agreed to arbitrate Plaintiff's claims before the Judicial Arbitration and Mediation Services ("JAMS") dispute resolution provider. *See Ex  H.*

53. Plaintiff filed yet another Complaint, this times before JAMS, on August 6, 2019. Plaintiff paid the related filing fee with JAMS on or about the same date.

54. Plaintiff paid an additional filing expense to JAMS on or about September 24, 2019 despite argument that JAMS was applying the incorrect schedule of fees for an FLSA case.

55. An Amended Complaint was filed before JAMS on October 24, 2019. At that time, no case management conference had taken place.

56. On or about November 12, 2019, JAMS made another financial request of Plaintiff

that he did not believe applied to FLSA cases. In sum, Plaintiff argued that the employment rules for JAMS should apply and not commercial rules because Plaintiff claimed Defendant misclassified him as an independent contract and not an employee.

57. On or about January 20, 2020, Plaintiff disputed the schedule of fees with JAMS.

58. JAMS requested a response from Defendant as to the schedule of fees.

59. On or about February 21, 2020, counsel for Defendant informed JAMS and Plaintiff that he was removing himself due to health reasons.

60. On or about February 24, 2020, Defendant responded to JAMS regarding the schedule of fees.

61. On or about March 12, 2020, JAMS determined that it would apply the schedule of fees argued for by Plaintiff (employment rules) and that all costs would be the responsibility of Defendant. *See Ex I.*

62. On or about April 1, 2020, Defendant argued that JAMS had incorrectly sided with Plaintiff regarding the schedule of fees.

63. On or about April 3, 2020, JAMS maintained its decision to apply the schedule of fees argued for by Plaintiff. JAMS notified the parties that arbitration would only be administrated if both parties agreed to the schedule of fees argued for and won by Plaintiff. *See Ex J.*

64. On or about April 15, 2020, Defendant again argued with JAMS that it was applying the wrong schedule of fees.

*65.* On or about April 16, 2020, JAMS notified the parties that arbitration would only be administrated if both parties agreed to the schedule of fees argued for and won by Plaintiff. *See Ex K.*

66. On or about April 24, 2020, Defendant requested a refund of monies paid to JAMS

and willfully refused to pay the relevant filing costs to proceed with JAMS. *See Ex L.*

67. Based on Defendant's unwillingness to comply with JAMS' schedule of fees, JAMS closed Plaintiff's file on or about April 30, 2020. *See Ex M.*[1]

68. As of the date of this filing, Defendant has yet to agree to enter into a temporary tolling agreement to preserve Plaintiff's claims despite multiple requests by Plaintiff's counsel.

69. As a result of Defendant's actions, Plaintiff and the class members are forced to file this lawsuit to vindicate their rights.

70. Based on Defendants failure to arbitrate the claims as agreed upon, Defendant has waived and/or forfeited any right to proceed through arbitration.

71. Based on Defendant's willful action, Plaintiff and the class members' claims should be equitably tolled for the time period when Plaintiff initially filed his Complaint with AAA through the present.

## COLLECTIVE ACTION ALLEGATIONS

72. Plaintiff and the class members performed the same or similar job duties as one another in that they provided security related services for Defendants.

73. Plaintiff and the class members were all hourly paid workers.

74. Plaintiff and the class members typically worked similar hours, more than forty (40) hours per week.

75. Further, Plaintiff and the class members were subjected to the same pay provisions in that they were not compensated at time-and-one-half their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

76. Thus, the class members are owed overtime wages for the same reasons as Plaintiff.

---

[1] Notably JAMS refused to refund Plaintiff's portion of the filing fees, so Plaintiff has now needlessly expended yet another filing fee due to Defendant's unwillingness to proceed with the case pursuant to the agreement.

8

77. This policy or practice was applicable to Plaintiff and the class members.

78. Application of this policy or practice does not depend on the personal circumstances of Plaintiff or those joining this lawsuit, rather, the same policies or practices which resulted in the non-payment of overtime to Plaintiff apply to all class members.

79. Accordingly, the class members are properly defined as:

> **All Security Officers who worked for Defendant, FREEMAN SECURITY SERVICES, INC., within the last three years who were not compensated at time-and-one-half their regular rate of pay for all hours worked in excess of 40 hours in a workweek.**

80. Defendants knowingly, willfully, or with reckless disregard carried out its illegal pattern or practice of failing to pay overtime compensation with respect to Plaintiff and the class members.

81. Defendants did not act in good faith or reliance upon any of the following in formulating its pay practices: (a) case law, (b) the FLSA, 29 U.S.C. § 201, et seq., (c) Department of Labor Wage & Hour Opinion Letters or (d) the Code of Federal Regulations.

82. During the relevant period, Defendants violated § 7(a)(1) and § 15(a)(2), by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA as aforesaid, for one or more workweeks without compensating such employees for their work at a rate of at least the time-and-one-half for all hours worked in excess of 40 hours in a work week.

83. Defendants have acted willfully in failing to pay Plaintiff and the class members in accordance with the law.

**COUNT I:
VIOLATION OF THE OVERTIME PROVISION OF THE
<u>FAIR LABOR STANDARDS ACT</u>**

84. Plaintiff re-alleges and incorporates herein the allegations contained in paragraphs

1 through 83 above.

85. Plaintiff is entitled to be paid time and one-half for each hour worked in excess of forty (40) in each workweek.

86. Plaintiff regularly worked more than 40 hours a week.

87. Defendant refused to compensate the Plaintiff for all hours worked in excess of 40 hours as required by the Fair Labor Standards Act.

88. By reason of the intentional, willful, and unlawful acts of the Defendant, Plaintiff has suffered damages plus incurring costs and reasonable attorneys' fees.

89. As a result of Defendant's willful violations of the Fair Labor Standards Act. Plaintiff is entitled to liquidated damages as provided in § 216 of the Fair Labor Standards Act.

WHEREFORE, Plaintiff prays that this Court will grant judgment against the Defendant as follows:

(a) Awarding damages against the Defendant on the basis of Defendant's willful violations of the Fair Labor Standards Act. 29 U.S.C.§ 201 et seq. and other Federal Regulations;

(b) Awarding Plaintiff actual damages in the amount shown to be due for unpaid overtime compensation for hours worked in excess of forty weekly, with interest;

(c) Awarding Plaintiff an equal amount representing/liquidated damages;

(d) Conditional certification of a collective action;

(e) Equitable tolling of the status of limitations due to Defendants refusal to proceed with arbitration;

(f) Sanctions versus Defendant for refusing to proceed with arbitration including, but not limited to, reimbursement of Plaintiff's filing fees and Plaintiff counsel's time expended in pursuing arbitration;

(g)     Awarding Plaintiff costs, and reasonable attorneys' fees; and

(h)     Granting such other and further relief this Court deems equitable and just and/or available pursuant to Federal Law.

## COUNT II:
## RETALIATION IN VIOLATION OF
## THE FAIR LABOR STANDARDS ACT

90.     Plaintiff realleges and incorporates all allegations contained within Paragraphs 1-83, as if fully set forth in this Count.

91.     The acts of Defendant, by and through its agents and employees, violated Plaintiff's rights against retaliation under the FLSA.

92.     Plaintiff was terminated by Defendant for refusing to lie for Defendant during a DOL audit.

93.     Defendant did not have a legitimate, non-discriminatory/retaliatory reason for Plaintiff's firing.

94.     The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

95.     The conduct of Defendant was so willful and wanton, and in such reckless disregard of the statutory rights of the Plaintiff, as to entitle him to an award of punitive damages against Defendant, to deter Defendant, and others, from such conduct in the future.

96.     Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to the FLSA.

97.     Plaintiff has no plain, adequate, or complete remedy at law for the actions of

Defendant which have caused, and continue to cause, irreparable harm.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays that this Court will grant judgment against the Defendant as follows:

i. declaring that Defendant violated the aforementioned causes of action;

ii. entering a judgment in Plaintiff's favor;

iii. awarding back pay;

iv. awarding front pay;

v. awarding compensatory damages;

vi. awarding attorney's fees and expenses; remove.

vii. awarding prejudgment interests, and, if applicable, post-judgment interest;

viii. awarding punitive damages (when ultimately pled and approved by this Court);

ix. awarding liquidated damages;

x. awarding any such other and further permanent injunctive, declaratory, legal or equitable relief in any combination to which this Court deems just and proper.

## DEMAND FOR JURY TRIAL

57. Plaintiff demands a jury trial on all issues so triable against Defendants.

Dated this __26th__ day of June, 2020.

                                                    Respectfully submitted,

                                                    **s/ LOUIS MONTONE**
                                                    Carlos V. Leach, Esquire
                                                    FBN 0540021
                                                    Louis Montone, Esquire
                                                    FBN 0112096
                                                    THE LEACH FIRM,. P.A.

631 S. Orlando Ave., Suite 300
Winter Park, FL 32789
Telephone: (407) 574-4999
Facsimile: (833) 423-5864
Email: cleach@theleachfirm.com
Email: lmontone@theleachfirm.com
*Attorneys for Plaintiff*